EMPLOYMENT AGREEMENT

EMPLOYMENT AGREEMENT ("Agreement") dated as of the 8th day of January 2020 by and between JONAS BRONCK HOUSING COMPANY INC., as owner of Jonas Bronck Senior Apartments, located at, and more commonly known as, 230 East 179th Street, Bronx, NY 10457 (the "Property"), its successors and or assigns, as Employer ("Employer"), and Wilburt Perez, as Employee ("Employee");

W I T N E S S E T H:

WHEREAS Employer wishes to employ Employee and Employee wishes to be employed by Employer upon the terms and conditions contained in this Agreement;

NOW, THEREFORE, it is agreed as follows:

1. <u>Employment and Terms</u>. Employer agrees to employ Employee as the superintendent of the property located at 230 East 179th Street, Bronx, NY 10457 (the "Property") and Employee agrees to accept such employment on the terms and conditions set forth below.

2. <u>Duties</u>. Employee shall, subject to the control of Employer or any manager of Employer, perform, on behalf of Employer, all duties and services incident to his position as Superintendent, and such other duties consistent with such position as may from time to time be assigned to him (the "Services"). Employee shall devote his full time, effort, and attention to the business and affairs of Employer and shall perform his duties and services hereunder to the best of his ability.

3. <u>Compensation</u>. For the full, prompt and faithful performance of all the duties and services to be performed by Employee hereunder, Employer agrees to pay, and Employee agrees to accept, during the term:

   (a) Salary at the rate of $68,000 annually, payable in equal bi-weekly installments; Employer may withhold from any amounts payable under this Agreement such federal, state or local taxes as shall be required to be withheld pursuant to any applicable law or regulation;
   (b) Cost of living increases or bonuses to be determined in the absolute discretion of Employer based on Employee's performance, inflation rates, and other factors which Employer considers in making such determinations;
   (c) Health benefit: basic 'single' health plan with Dental to be provide;
   (d) Retirement: a "401k" type plan to be established; Employer will match Employee's contributions to the 401k up 1% of the base salary for the first four years; beginning with the fifth year of employment, Employer will match Employee's contributions up to 3% of the base salary; Employer annual contributions will vest after the fifth year anniversary of each contribution by Employer.
   (e) Holidays: New Year's Day, Memorial Day, Independence Day (4th of July), Labor Day, Thanksgiving, Christmas Eve after 4pm, Christmas Day;
   (f) Building coverage is the responsibility of Employee;

{00284424.DOC; 1}

(g) All emergencies take priority over any scheduled "day off" and coverage for Employee's duties or other employee's duties must be arranged in advance, or as soon as possible in the event of an emergency;

(h) Vacation: four (4) weeks annually during each of the first five years; beginning the sixth year of employment, Employee will earn one additional vacation day each year up to a maximum total of five (5) weeks of vacation; after the tenth year, no further additional vacation days will be earned;

(i) Parking: use of (1) space as designated in the main parking area plus one (1) additional space in the driveway on 179th street;

(j) During the term of his employment, the use and to occupancy of the superintendent's Apartment 1D located at 230 East 179th Street, Bronx NY 10457 (the "Superintendent's Unit"), as an incident of his employment; if Employee's employment is terminated for any reason, or no reason at all, Employee's right to use and occupy the Superintendents Unit shall terminate at the same time;

(k) Employee shall not be permitted to rent or sublease the Superintendent's Unit and shall not permit any third person to use and occupy the Superintendent's Unit without the prior express written permission of Employer; if such third person is a member of Employee's immediate family, Employer will not unreasonably withhold consent; any such third party shall not be entitled to any rights as a tenant and shall not have the right to remain in the Superintendent's Unit after Employee's employment is terminated;

(l) Employer will pay for basic appliances and utilities, namely, gas, electric ,heat, and hot water; all other utilities, including but not limited to cell phone, cable, telephone and internet; Employee shall be permitted to use any existing appliances, AC units, and/or furniture currently located in the Superintendent Unit, if any, which items are and shall remain the property of Employer; Employee may not make any alterations to cable or telephone inside wiring (such as may occur when changing telecommunications providers or adding phone lines) without prior written consent of Employer. The notice shall include the name, address, and telephone number of any new telecommunication provider. Employee agrees to pay all costs resulting from the alteration and agrees to pay to Employer any costs associated with restoring the inside wiring to the condition at the time of move-in, except for reasonable wear and tear;

(m) Without Owner/Agent's prior written permission as an addendum to this Agreement, no pets, no waterbeds, no, wood pellet, gas, or charcoal grills or barbeques shall be permitted in the Superintendent's Unit or on the grounds of the Property;

(n) No illegal substances, hazardous or flammable or inflammable chemicals, or propane tanks shall be kept or allowed in or about the Superintendent's Unit;

(o) Employee shall not: (i) violate any criminal or civil law, ordinance, or statute in the use and occupancy of the Superintendent's Unit; (ii) commit waste or nuisance, or cause damage to the Superintendent's Unit or the Property; or (iii) annoy, harass, injure, molest, or interfere with any resident or neighbor; any such action may result in the immediate termination of Employee's employment as provided herein and by law;

(p) Repairs and Alterations to the Unit Occupied by Employee: Except as provided by law, no repairs, decorating or alterations shall be done by Employee without

(q)  Employer's prior written consent. Employee shall notify Employer in writing of any repairs or alterations contemplated. Decorations include, but are not limited to, painting and wallpapering;

(q)  Employee shall hold Employer harmless and indemnify Employer as to any mechanics lien recordation or proceeding caused by Employee.

(r)  Acceptance of Premises: Employee has inspected the premises, furnishings and equipment, and has found them to be satisfactory. All plumbing, heating and electrical systems are operative and deemed satisfactory.

(s)  Care, Cleaning, Maintenance and Insurance: Employee agrees to leave the premises in the same condition as it was received, subject to normal wear and tear. Employee acknowledges that the damage caused by smoking tobacco products is considered above normal wear and tear and will damage surfaces and fixtures, including, the carpet, carpet pad, wallboard, window coverings and ceilings. Depending on the severity of the damage, costs for restoration of the unit may include, but are not limited to, cleaning, sealing, painting, deodorizing, and possible replacement of fixtures and various surface materials;

(t)  Except as prohibited by law, Employee shall keep the premises and furniture, furnishings and appliances, and fixtures, which are rented for Employee's exclusive use, in good order and condition;

(u)  Upon move-out, Employee agrees to return the unit to the same level of cleanliness it was in at the inception of the tenancy;

(v)  Employee shall pay Employer for costs to repair, replace or rebuild any portion of the premises damaged by Employee, Employee's guests or invitees;

(w)  Employee shall obtain his own insurance to cover loss or damage of or to his personal property; Employer does not insure Employee's property; Employee is not a co-insured and is expressly excluded from any insurance policy held by Employer that is now in effect or becomes effective during the term of this Agreement.

(x)  Employee acknowledges that in the event he is injured while performing his duties or during working hour on the Property, his sole remedy is to file a claim under Workers Compensation and that he has no right to bring an action at law against Employer for any such injuries.

4.  <u>Place of Performance</u>.  Employee shall perform the Services at the Property.

5.  <u>At-Will Employment</u>.  Employee acknowledges that his employment with Employer is for no specified period and constitutes "at-will" employment. The parties acknowledge to each other that Employee may terminate his employment at any time, for any reason or for no reason-and Employer may terminate Employee's employment any time, for any-reason or for no reason, upon giving Employee at least 30 days' written notice of termination (or the industry standard notice period, whichever is longer), or immediately upon a material breach of this Agreement by Employee (described below). Employee shall provide Employer with a minimum of 60 days' written notice of resignation, to enable Employer to find a replacement so there will be no lapse in coverage at the Building. Employee shall be entitled to no further compensation or other benefits under this Agreement subsequent to this termination except as to the that portion of any unpaid salary and other benefits accrued and earned by him hereunder up to and including the effective date of such termination. Upon Employee's termination, Employee shall vacate the Superintendent Unit immediately (but, in any event, within thirty (30) days from

3

the last date of employment, at the latest) and all appliances, AC units, and furniture shall remain in the Superintendent Unit. Employee agrees after termination to co-operate with Employer and devote a reasonable amount of time to Employer to insure a smooth transition of Employee's duties to other individuals. Employer will provide Employee with periodic evaluations to address any performance related deficiencies that do not arise to the level of a material breach of this Agreement. If the deficiencies have not been cured after three notices, Employer shall have the right to terminate Employee's employment. Nothing contained herein shall be deemed to prevent Employer from terminating Employee's employment for material breaches of this Agreement, such as abandonment of his/her post, causing or engaging in a physical altercation with, or causing injury to, a resident, abusive behavior (shouting, screaming, threatening, or menacing behavior) towards a resident, in which case, no notice shall be required before Employer may immediately terminate the employment of Employee and there shall be no requirement to give any notice. If Employee fails to give the required notice, any unused vacation time shall be deemed forfeited and any Employer contributions to the 401K plan that have not yet vested shall be cancelled and withdrawn by the Employer from the 401K.

  6. Contractual Restrictions-Restraints. Employee represents that he is free of any contractual restrictions and restraints in accepting employment from Employer and that Employee has not and will not in connection with this employment, divulge any confidential information.

  7. Hold Harmless. Employee acknowledges that Employee is not authorized to bind Employer to any agreement with any third party without the prior consent of the officers of Employer. Notwithstanding the foregoing sentence, Employee agrees to hold Employer harmless from and against any damages, claims, losses, expenses (including reasonable fees of litigation) or fines incurred by Employer due to Employee binding Employer to any agreement with any third party.

  8. Entire Agreement; Amendments; Waivers. This Agreement constitutes the entire agreement and understanding between Employee and Employer with respect to the subject matter hereof and supersedes any prior agreement, written or oral, between Employee and Employer and/or any of its subsidiaries or affiliates or assignees. This Agreement shall not be modified or amended except by an instrument in writing signed by the parties hereto. No provision of this Agreement shall be waived, alteration or amended except in writing signed by the party against whom such waiver, alteration or amendment is asserted. Any such waiver shall be limited to the particular instance and the particular time when and for which it is given.

  9. Notices. Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if hand delivered or mailed by certified mail, return receipt requested or sent by a nationally recognized overnight courier to the party to whom notice should be given at the address set forth below or at such other address as may hereafter be designated by such party in writing to the other party:

    If to Employee:  Superintendents Unit — Apartment 1D
            230 East 179th Street
            Bronx, NY 10457

If to Employer:  Jonas Bronck Housing Co Inc.
230 East 179th Street
Bronx NY 10457
c/o Management Office

10. *Interpretation*. In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision has never been contained herein. If, moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

11. *Successors*.

(a) This Agreement is personal to Employee. Without the prior written consent of Employer, this Agreement and Employee's duties and obligations under this Agreement shall not be assignable by Employee. Employee's rights to receive earned compensation under this Agreement shall be assignable by operation of law or bequest to Employee's estate. This Agreement shall inure to the benefit of and be enforceable by Employee's legal representatives and Employer's successors and assigns.

(b) Employer may assign this Agreement without the prior consent of Employee to any successor (whether direct or indirect, by purchase of the Property, stock or assets, merger, consolidation or otherwise) to all or substantially all of the business and/or assets of Employer or any successor owner of the Property; provided, that such assignee assumes in writing all of Employer's obligations under this Agreement.

12. *Governing Law*. This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of New York.

13. *Captions*. The caption headings in this Agreement are for the convenience of reference only and are not intended and shall not be construed as having any substantive effect.

IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the date first above written.

JONAS BRONCK HOUSING COMPANY INC.,
EMPLOYER

By: _____
Name: Michael J. Martino
Title: Managing Agent

_____
Wilburt Perez EMPLOYEE

Dated : January 8, 2020